**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

    Plaintiff(s),

v.

JAMES GARNER,

    Defendant(s).

2:13-CR-106 JCM (PAL)

**ORDER**

Presently before the court is the report and recommendation of Magistrate Judge Peggy Leen (doc. # 31) regarding defendant James Garner's motion to suppress (doc. # 23). The government filed an objection to the report and recommendation (doc. # 35), and defendant filed a response (doc. # 36).

**I.      Background**

The incident arises out of a search that was conducted by two members of the Las Vegas Metropolitan Police Department. On the night of March 5, 2013, Officers Bowman and Valle were on patrol and received a call to assist a fellow officer in apprehending a fleeing suspect. The suspect was described as a black male wearing dark clothing. The officers drove their marked patrol car to the Siegel Suites on Teddy and Sahara, located about four-tenths of a mile from the location where the fleeing suspect had last been seen. According to the officers, when they drove past the alley behind the Siegel Suites, they observed an individual seated in the driver's seat of a PT Cruiser who was slumped down, as if to avoid being seen. The PT Cruiser was legally parked in a parking spot

**James C. Mahan**
**U.S. District Judge**

at the time.

After using their spotlight to get a clear view inside the vehicle, the officers observed that the individual in the driver's seat, who would later identify himself as James Garner, was a black male wearing dark clothing. Upon seeing this, the officers brought their patrol car to a stop in a way that partially blocked the front of the vehicle and activated their emergency lights. Both officers then approached Garner, and Officer Bowman asked if Garner would be willing to speak to him. As Officer Bowman approached the car, he reportedly saw Garner reach toward his waistband. Immediately after seeing this, Officer Bowman drew his weapon and ordered Garner to get out of the vehicle. Garner complied, and Officer Valle quickly patted him down and discovered a handgun as well as a small amount of marijuana.

On March 20, 2013, a grand jury returned an indictment charging Garner with a single count of possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On August 5, 2013, defendant filed a motion to suppress. (Doc. # 23). Defendant argued that the officers lacked reasonable suspicion for an investigatory detention, as defendant was merely sitting in his car, which was legally parked at the time of the incident. Thus, defendant argues that all evidence derived from the unlawful search must be suppressed as tainted fruit of a Fourth Amendment violation.

The government responded. (Doc. # 25). The government argued that no requisite level of suspicion was required for the officers to merely question Garner, and that seeing him reach into his waistband created reasonable suspicion for a search. Additionally, the government argued that because Garner was in the general vicinity in which the fleeing suspect was last seen, met the generic description of that suspect, and was slumped down while sitting in his car, they had reasonable suspicion to carry out a search.

Magistrate Judge Leen, upon considering the totality of the circumstances, found that a reasonable person would not have felt at liberty to ignore the officers, and thus concluded that Garner had been seized within the meaning of the Fourth Amendment even prior to the officers' exiting their patrol car. Magistrate Judge Leen also found that the circumstances did not create reasonable

suspicion that Garner had committed a crime, and thus the pat down search was not warranted. Thus, the magistrate judge recommended that the district court grant Garner's motion to suppress.

## II. Legal standard

A party may file specific written objections to the findings and recommendations of a United States magistrate judge made pursuant to Local Rule IB 1–4. 28 U.S.C. § 636(b)(1)(B); D. Nev. LCR IB 3–2. Upon the filing of such objections, the district court must make a de novo determination of those portions of the report to which objections are made. *Id.* The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)©; D. Nev. IB 3–2(b). However, the district court need not conduct a hearing to satisfy the statutory requirement that the district court make a "de novo determination." *United States v. Raddatz*, 447 U.S. 667, 674 (1980) (observing that there is "nothing in the legislative history of the statute to support the contention that the judge is required to rehear the contested testimony in order to carry out the statutory command to make the required 'determination' "). Rather, a hearing is required only when the district court "reject[s] a magistrate judge's credibility findings made after a hearing on a motion to suppress." *United States v. Ridgway*, 300 F.3d 1153, 1154 (9th Cir. 2002).

## III. Discussion

The court limits its analysis to a de novo review of the portions of the report to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B). The government's objections to the report are the same arguments it presented in its response to the motion to suppress. The government argues that the officers' initial questioning of Garner did not require reasonable suspicion, and that the officers certainly had reasonable suspicion to search Garner at the time they saw him reach toward his waistband. The government also argues that the officers reasonably suspected that Garner had committed a crime due to his presence in the area where a suspect had recently fled, the fact that he matched the description of the fleeing suspect, and Garner's act of "slumping down" while sitting in his car.

. . .

. . .

First, the government argues that reasonable suspicion was not required at the point that the officers began questioning defendant. While the government is correct that police officers asking questions of an individual in a public place does not necessarily require Fourth Amendment scrutiny, *see Florida v. Royer*, 460 U.S. 491, 497 (1983), reasonable suspicion is required for police to question an individual when their actions restrain the individual's liberty "such that a reasonable person would have believed he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 555 (1980). Indeed, for officers to hold an individual, even briefly, for an investigatory stop, they must have a reasonable suspicion supported by specific and articulable facts that suggest the suspect is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

The government asserts that no investigatory stop occurred in this case because the officers merely approached Garner and asked him if he would be willing to answer a few questions. The government also cites to Ninth Circuit authority indicating that a situation in which officers partially blocked a car that a suspect was sitting in did not constitute an investigatory stop. *See United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994).

While the government is correct that the officers' act of stopping their patrol car in a way that partially blocked Garner's car from moving forward may not, by itself, have turned the situation into an investigatory stop, the court finds that the totality of the circumstances indicate that a seizure occurred. In addition to partially blocking Garner's car from moving forward, the officers activated the patrol car's emergency lights before exiting the vehicle and asked Garner if he would be willing to answer a few questions.[1]

At the time, Garner very likely thought that the officers intended to place their car in a way that impeded his movement, and the activation of the emergency siren was an additional signal that the police were asserting their authority as officers of the law. Given these circumstances, a reasonable person would not feel that they could simply ignore the officers, and would certainly

---

[1] The government argues, and this court agrees, that activating a patrol car's lights in and of itself does not convert what would otherwise be a voluntary conversation with police into an investigatory stop. However, in this particular instance, the additional details of the circumstance turned this encounter into one in which a reasonable person would not have felt free to leave.

believe that they were not free to leave. Accordingly, this court agrees with the magistrate judge's conclusion that an investigatory stop took place prior to asking Garner if he would be willing to answer their questions.

Thus, if the officers did not have reasonable suspicion at the time they partially blocked Garner's car and activated their patrol car's emergency lights, their investigatory stop of Garner was performed in violation of the Fourth Amendment. Evidence obtained as a result of a violation of the Fourth Amendment must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

The Supreme Court has characterized reasonable suspicion to be "more than an inchoate and unparticularized suspicion or hunch," yet "considerably less than proof of wrongdoing by a preponderance of the evidence standard." *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *see also Terry*, 392 U.S. at 27. Moreover, the officer's basis for suspicion must be particularized and objective. *United States v. Thomas*, 211 F. 3d 1186, 1189 (9th Cir. 2000); *see also Illinois v. Wardlow*, 528 U.S. 119 (finding that reasonable suspicion is based largely on common sense judgments and human inferences by the investigating officer). Officers have reasonable suspicion when "specific, articulable facts . . . together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Choudhry*, 461 F.3d 1097, 1105 (9th Cir. 2006) (internal quotation marks omitted). The reasonable suspicion analysis takes into account the totality of the circumstances. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc).

In this case, the specific facts articulated by Officers Bowman and Valle did not give rise to "reasonable suspicion" which would have permitted the initial investigatory stop. The basis for suspicion articulated by the officers consisted of the following facts: (1) Garner was found sitting in a car that was within half a mile of the location in which a fleeing suspect had last been seen; (2) Garner matched the description of "a black man wearing dark clothing"; and (3) Garner "slumped down" while sitting in the driver's seat of his car.

. . .

Even taken together, all of these facts would not create reasonable suspicion that Garner had committed, was committing, or was about to commit a crime. In fact, the first two of these foundations are so vague that they could have likely described dozens of individuals on that particular night. Even considering these factors in combination with the officers' general observations about Garner's posture as he sat in his car which was legally parked beside the Siegel Suites does not raise a reasonable inference that he was involved in criminal activity, and only suggests that he may have been drowsy or waiting for someone staying in the building.

Even though the officers ended up discovering contraband in their search, the fact that the investigatory stop was not warranted in the first instance indicates that the evidence discovered in the pat down was nothing more than "the fruit of the poisonous tree." Accordingly, the evidence must be suppressed. Therefore the court agrees with the findings of the magistrate judge and will grant defendants' motion.

## IV.  Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the report and recommendation of Magistrate Judge Peggy Leen (doc. # 31) regarding defendant James Garner's motion to suppress (doc. # 23) be, and the same hereby is, ADOPTED in its entirety.

IT IS FURTHER ORDERED that defendant James Garner's motion to suppress (doc. # 23) be, and the same hereby is, GRANTED.

DATED December 12, 2013.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 6 -